**U N I T E D   S T A T E S   D I S T R I C T   C O U R T
D I S T R I C T   O F   N E W   J E R S E Y**

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

**WILLIAM J. MARTINI
             JUDGE**

**LETTER OPINION**

January 26, 2010

Donald E. Boyd
4 Right
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625
    *(Pro Se Plaintiff)*

John B. Sogliuzzo, Esq.
50 Northfield Avenue, Suite 200
West Orange, NJ 07052
    *(Attorney for Defendant D. Harvey)*

     Re:   *Donald E. Boyd v. State of Arizona,* et al.
           Civil Action No. 08-4521

Dear Litigants:

    This matter comes before the Court on the Motion to Dismiss filed by Defendant Sergeant D. Harvey ("Defendant" or "Harvey") pursuant to Fed. R. Civ. P. 12(b)(2). There was no oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's motion is **GRANTED**, and Defendant is dismissed from this action.

**I.    BACKGROUND**

This is an action arising out of a *pro se* prisoner complaint. In 2003, law enforcement officials from the Maricopa County Sheriff's Office in Phoenix, Arizona, investigated Plaintiff Donald E. Boyd ("Plaintiff" or "Boyd") in connection with the 1994 assault and rape of a woman that occurred in the Phoenix area. (Am. Cmplt. ¶ 36). At the time of the investigation, Boyd was incarcerated on unrelated charges in New Jersey and serving a life sentence and a consecutive 60 year sentence. (Am. Cmplt. ¶ 48; Dft's Br. at 3). Boyd was apparently linked to the 1994 crime by newly discovered DNA evidence. (Am. Cmplt. ¶¶ 56-57).

After the apparent connection was made between Boyd and the DNA evidence, further blood and DNA tests were conducted and analyzed. (Am. Cmplt. ¶¶ 48, 53). Additionally, the victim of the crime was presented with a photographic array of possible suspects. (Am. Cmplt. ¶ 38). Maricopa County authorities found that the results of these additional tests implicated Boyd and that the victim identified Boyd in the photographic array. (Am. Cmplt. ¶¶ 39, 65). Boyd refutes these findings, asserting that the blood sample did not match his blood type, and that his photograph was not even included in the array given to the victim, such that she could not possibly have picked him out. (Am. Cmplt. ¶¶ 43, 52-53, 60). Boyd also asserts that he was not in Arizona at the time the crime was committed. (Am. Cmplt. ¶ 63).

Nevertheless, based on these findings, Boyd was arrested, indicted for the assault and rape, and extradited to Arizona in 2007, where he was held at the Maricopa County Jail. (Am. Cmplt. ¶ 61, 68). For seven months, he was placed in administrative segregation and his movements were restricted. (Am. Cmplt. ¶ 72). He also alleges that he was denied proper medical treatment during this time. (Am. Cmplt. ¶ 70).

In March 2008, the Maricopa County prosecutor's office dismissed the indictment against Boyd due to insufficient evidence. (Am. Cmplt. ¶ 76-77). He was subsequently returned to New Jersey, where he is serving out his original sentences at New Jersey State Prison in Trenton.

In September 2008, Plaintiff filed a law suit in federal court in New Jersey against numerous law enforcement officers and governmental entities in New Jersey and Arizona for claims arising out of his arrest, indictment, and transfer to Arizona. He filed a complaint and then an amended complaint, but because the amended complaint incorporates the original complaint by reference and given Plaintiff's *pro se* status, both will be considered here. The gravamen of Plaintiff's grievance is that he was mistreated by law enforcement officials, possibly as retaliation for two law suits that he filed against New Jersey county jail officials, in which he prevailed. (Cmplt. ¶ 37; Am. Cmplt. ¶ 35).

Specifically, Plaintiff alleges (1) violation of his civil rights pursuant to 42 U.S.C. §1983, (2) false arrest, (3) malicious prosecution, (4) false imprisonment, (5) conspiracy to violate his civil rights in violation of 42 U.S.C. § 1985, (6) violation of his civil rights pursuant to 42 U.S.C. § 1986, (7) "emotional [sic] infliction of emotional distress," (8) violation of the state constitution, (9) federal constitutional tort, (10) state constitutional tort, (11) medical malpractice/ deliberate indifference, and (12) tort seeking the return of $750 from his former lawyer. Plaintiff's claims involving Defendant Harvey pertain to Harvey's review of certain police reports, preparation of the photographic array that

allegedly did not contain Plaintiff's picture, fabrication of a story that Plaintiff's DNA matched samples from the crime scene, and alleged refusal to turn over to the defense DNA evidence that would have vindicated Plaintiff.  (Am. Cmplt. ¶¶ 45, 65, 75).  Presently before the Court is Defendant Harvey's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction.

## II.    ANALYSIS

Under Fed. R. Civ. P. 12(b)(2), the court may grant a motion to dismiss when there is a lack of personal jurisdiction over the defendant.   A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed by the law of the forum state.  *Time Share Vacation Club v. Atl Resorts Ltd*., 735 F.2d 61, 63 (3d Cir. 1984); *O'Connor v. Sandy Lane Hotel Co. Ltd*, 496 F.3d 312, 316 (3d Cir. 2007).   Thus, the court must first apply the relevant state's long arm statute to see if it permits the exercise of personal jurisdiction.   Then the court must apply the Due Process Clause of the Constitution.  *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 258-259 (3d Cir. 1998).

In New Jersey, the appropriate exercise of personal jurisdiction over non-resident defendants is allowed to the fullest limits of the Due Process Clause of the Constitution.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).   In order to assert personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment requires that (1) the defendant have "minimum contacts" with the forum, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."  *Toys "R" US, Inc. v. Step Two, S.A*., 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 368 (3d Cir. 2002); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Minimum contacts exist when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction.  *Metcalfe v. Renaissance Marine, Inc*., 566 F.3d 324, 334 (3d Cir, 2009).   Because general and specific jurisdiction are "analytically distinct categories," the Court must consider the facts relevant to each category separately.   *Id*.

A court may have general jurisdiction over a defendant who has "continuous and systematic" contacts with the forum, whether or not those contacts are related to the cause of action.  *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp*., 229 F.3d 254, 259 (3d Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).   If the defendant's contacts fall short of the "continuous and systematic" standard, then there is no general jurisdiction and the court must consider whether specific jurisdiction exists with respect to the defendant.

Specific jurisdiction exists if the defendant purposefully directed its activities at the forum, and the litigation arises out of or relates to at least one of those activities.  *BP Chemicals Ltd.*, 229 F.3d at 259.   Specific jurisdiction is both claim-specific and defendant-specific.   *See Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001*); Rush*

3

*v. Savchuk*, 444 U.S. 320, 332 (1980).

Once minimum contacts have been established under either general or specific jurisdiction, the Court must next determine if exercising personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 476; *International Shoe Co.*, 326 U.S. at 310. Courts addressing the fairness question may consider the burden on the defendant, whether or not defendant should have reasonably anticipated being haled into court in the forum, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.*

Turning to Plaintiff's complaints, the Court appears to lack jurisdiction over Defendant Harvey. The only specific allegations that Plaintiff makes against Harvey pertain to his review of documents and supervision of the photographic array. Harvey performed these actions once only, and therefore they do not satisfy the continuous or systematic standard for general jurisdiction. Moreover, Harvey performed all of his duties from within the state of Arizona. Although the investigation resulted in the extradition of an individual from New Jersey, the individual actions were taken for the benefit of law enforcement in Arizona. They arose out of an Arizona investigation and would have been conducted regardless of Plaintiff's location. Therefore, they cannot be deemed purposeful availment of the forum state as required for specific jurisdiction. *See Steelman v. Carper*, 124 F. Supp.2d 219, 224 (D. Del. 2000) (finding that an out-of-state police officer's act of extraditing an arrestee to the forum state did not constitute sufficient minimum contacts or purposeful availment to support a finding of either general or specific personal jurisdiction in the forum state). Minimum contacts are lacking, and as such, the Court does not have jurisdiction over Harvey.[1]

### III. CONCLUSION

Plaintiff's allegations of misconduct are serious and should not be taken lightly. Nevertheless, it is clear that a federal district court in New Jersey does not have the authority to adjudicate this matter. Therefore, Defendant Harvey's motion to dismiss is **GRANTED** with prejudice and he shall be dismissed from this action entirely. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

---

[1] The Court notes that even if Harvey's actions somehow supported a finding of minimum contacts, jurisdiction would still be lacking, because the inquiry would not be over and the Court would next have to consider whether haling Harvey into court in New Jersey would comport with notions of fair play and substantial justice. Given that the burden on Harvey would be substantial and that Arizona would have a greater interest in adjudicating the matter because the wrongdoing occurred there, the Court would not likely conclude that this was fair or just.